SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesse Ramon Wozniak, | No. CV 10-2516-PHX-DGC (JFM) |
| Plaintiff, | **ORDER** |
| vs. | |
| Unknown Pricardo, et al., | |
| Defendants. | |

Plaintiff Jesse Ramon Wozniak who is in the custody of the Arizona Department of Corrections (ADC) in Tucson, Arizona, filed this *pro se* civil rights action against various employees of the Maricopa County Sheriff's Office.  (Doc. 10.)  The remaining Defendants—Officer Lynette Stapley and Sergeant Freddie Durazo—move for summary judgment on the remaining claim that Defendants placed Plaintiff in unsanitary housing (Count III).[1]  (Doc. 54.)  Although the Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), advising Plaintiff of his obligation to respond, he did not do so.  (Doc. 56.)

The Court will grant the motion and terminate the case.

**I.     Count III**

    **A.     Legal Standards**

        **1.     Summary Judgment**

A court "shall grant summary judgment if the movant shows that there is no genuine

---

[1] The Court previously dismissed Counts I and II.  (Doc. 52.)

1 dispute as to any material fact and the movant is entitled to judgment as a matter of law."
2 Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under
3 summary judgment practice, the moving party bears the initial responsibility of presenting
4 the basis for its motion and identifying those portions of the record, together with affidavits,
5 which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323.

6 If the moving party meets its initial responsibility, the burden then shifts to the
7 opposing party who must demonstrate the existence of a factual dispute and that the fact in
8 contention is material, i.e., a fact that might affect the outcome of the suit under the
9 governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the
10 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
11 the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216,
12 1221 (9th Cir. 1995).

13 When considering a summary judgment motion, the court examines the pleadings,
14 depositions, answers to interrogatories, and admissions on file, together with the affidavits
15 or declarations, if any. See Fed. R. Civ. P. 56(c). At summary judgment, the judge's
16 function is not to weigh the evidence and determine the truth but to determine whether there
17 is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is
18 "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But,
19 if the evidence of the non-moving party is merely colorable or is not significantly probative,
20 summary judgment may be granted. Id. at 248-49. Conclusory allegations, unsupported by
21 factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List,
22 880 F.2d 1040, 1045 (9th Cir. 1989). See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978,
23 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers
24 is insufficient to raise genuine issues of fact and defeat summary judgment").

25 **2.     Conditions of Confinement**

26 A pretrial detainee's claim for unconstitutional conditions of confinement arises from
27 the Due Process Clause. Bell v. Wolfish, 441 U.S. 520 (1979). Detainees "retain the rights
28 afforded unincarcerated individuals"; thus, their conditions of confinement must not amount

1  to punishment. Id. at 531.  A condition is punitive under Bell if it is "intended to punish,"
2  or is "excessive in relation to its non-punitive purpose," or "is employed to achieve
3  objectives that could be accomplished in so many alternative and less harsh conditions."
4  Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004).  Thus, if a particular condition or
5  restriction is not reasonably related to a legitimate governmental objective or is arbitrary or
6  purposeless, a court may infer that the purpose of the action is punishment that may not be
7  inflicted on pretrial detainees. See Bell, 441 U.S. at 539.  But if a particular condition or
8  restriction of pretrial detention is "reasonably related to a legitimate governmental objective,
9  it does not, without more, amount to 'punishment.'"  Id.  Legitimate, non-punitive
10 government interests include "ensuring a detainee's presence at trial, maintaining jail
11 security, and effective management of a detention facility." Jones, 393 F.3d at 932 (citing
12 Hallstrom v. City of Garden City, 991 F.2d 1473, 1484 (9th Cir. 1993)).

13         A pretrial detainee's due process rights are at least as great as a convicted prisoner's
14 Eighth Amendment rights. Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir.
15 2003).  The Ninth Circuit has held that pretrial detainees' rights are comparable to prisoners'
16 rights under the Eighth Amendment, and so the same standards apply.  Frost v. Agnos, 152
17 F.3d 1124, 1128 (9th Cir. 1998) (relying on Redman v. County of San Diego, 942 F.2d
18 1435, 1442 (9th Cir. 1991)).  Contra Jones, 393 F.3d at 931 (the "more protective"
19 Fourteenth Amendment standard applies to conditions of confinement when detainees have
20 not been convicted of a crime).  As a minimum standard, the Eighth Amendment requires
21 that prison officials ensure that inmates receive adequate food, clothing, shelter, sanitation,
22 and medical care, and take reasonable measures to guarantee inmates' safety. Hoptowit v.
23 Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Farmer v. Brennan, 511 U.S. 825, 832 (1994).
24 However, this does not mean that federal courts can or should interfere whenever prisoners
25 are inconvenienced or suffer de minimis injuries. See Bell, 441 U.S. at 539 n.21 (noting that
26 a de minimis level of imposition does not rise to a constitutional violation).  "[T]he
27 circumstances, nature, and duration of a deprivation of these necessities must be considered
28 in determining whether a constitutional violation has occurred." Johnson v. Lewis, 217 F.

3d 726, 731 (9th Cir. 2000); see also Hutto v. Finney, 437 U.S. 678, 686-87 (1978) (a filthy, overcrowded cell and a diet of "grue" might be tolerable for a few days and intolerably cruel for weeks or months).

### B. Parties' Contentions

#### a. Defendants

Defendants assert that from August 16, 2010, until September 28, 2010, Plaintiff was housed within different cells on P3 of the Psych House within the Lower Buckeye Jail.[2] (Doc. 55, DSOF ¶ 2.) They assert that P3 is for patients needing heightened watch and restricted privileges because the patients have demonstrated behavior indicating that they may harm themselves. (Id. ¶ 3.) The dirty cell conditions allegedly occurred when Plaintiff was moved on September 13, 2010, to cell P3A15. (Id. ¶ 4.) Plaintiff complained to Defendants that upon entering the cell, he noticed feces smeared throughout the cell; Plaintiff told Stapley that the cell was not sanitized. (Id. ¶¶ 5-6.) Plaintiff was eventually provided cleaning supplies. (Id. ¶ 7.) Plaintiff remained in P3A15 until September 28, 2010. (Id. ¶ 8.)

Defendants also alleged that it is Correctional Health Services policy and practice for staff in P3 to clean and sanitize the cells before inmates inhabit them. (Id. ¶ 9.)

Defendants argue that the alleged deprivation is not sufficiently serious to constitute a due process violation and that the grievance documents show that Defendants made reasonable efforts to provide Plaintiff with cleaning materials. (Doc. 54 at 4-6.)

#### 2. Plaintiff

Plaintiff did not respond to Defendants' motion. Because a verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence, the Court will consider the allegations set

---

[2] Defendants' motion is supported by their Statement of Facts (Doc. 55 (DSOF)); the affidavit of Selethia Down, with attachments (Doc. 40, Ex. 1); and the affidavit of Nancy Longtin, LCSW, Mental Health Professional Supervisor at the Lower Buckeye Jail Mental Health Unit, with attachment (Doc. 55, Ex. 2).

1  forth in Plaintiff's First Amended Complaint. See Schroeder v. McDonald, 55 F.3d 454, 460
2  (9th Cir. 1995). In his First Amended Complaint, Plaintiff alleged that there were feces
3  smeared on the shower stall and the window seal. (Doc. 10.) When he told Stapley, she
4  merely said that she was sorry it was not to Plaintiff's standards. But six hours later, Plaintiff
5  complained to officers on another shift, and he was provided towels and cleaning solution.
6  He was exposed to the conditions for six hours. (Id.)

### C.     Analysis

The Court will grant summary judgment to Defendants. The Court finds that although clearly unpleasant and unsanitary, the conditions of confinement did not rise to the level of a Fourteenth Amendment violation. As noted, "the circumstances, nature, and duration" of a condition of confinement are to be considered in determining whether a constitutional violation has occurred." Johnson, 217 F. 3d at 731. In Anderson v. County of Kern, the plaintiffs, suicidal inmates, complained of an unsanitary "safety cell," which they described as dirty and smelling bad. 45 F.3d 1310, 1314-15 (9th Cir. 1995). The inmates were occasionally shackled to a grate over a pit toilet encrusted with excrement and urine; they were placed in the cells naked or clothed only in paper garments; they also complained about temporary deprivation of sinks, stand-up toilets, and beds for short periods of time. Id. at 1313-14. The periods of this confinement ranged from 90 minutes to all night. Id. at 1313. The Ninth Circuit held that the conditions of an unsanitary safety cell did not rise to the level of a constitutional violation. Id. at 1314-15. In Hendon v. Reed, a district court relied on Anderson to find that the plaintiff's claims that his own feces were thrown on him and that on another occasion urine was thrown on him did not demonstrate a prolonged or severe deprivation that would rise to the level of a constitutional violation. 2011 WL 2224720, at *7 (E.D. Cal. June 7, 2011); see also McCarter v. County of San Bernadino, 420 Fed. Appx. 739, at *740 (9th Cir. 2011), citing Anderson, 45 F3d at 1314 (indicating that lack of sanitation must be severe and prolonged to constitute a Fourteenth Amendment violation). On the other hand, in Sherman v. Gonzalez, 2010 WL 2791565, at *4 (E.D. Cal. July 14, 2010), a district court denied a motion to dismiss for failure to state a claim where the

1 plaintiff alleged that a five-hour exposure to sewage triggered an asthma attack sending him
2 to the hospital. And in McCray v. Burrell, 516 F.2d 357, 366-69 (4th Cir. 1975), cited in
3 Anderson, 45 F.3d 1314-15, the Fourth Circuit found a constitutional violation where the
4 prisoner was placed naked in a bare, concrete, mental observation cell with an
5 excrement-encrusted pit toilet for 48 hours and had no bedding, sink, washing facilities, or
6 personal hygiene items, and was not seen by a doctor until after he was released.

7 Defendants provide evidence, which Plaintiff does not dispute, that it is the practice
8 of health services to sanitize cells before inmates inhabit them. Here, the only condition
9 about which Plaintiff complains is smeared excrement in several places in the cell; unlike the
10 inmates in Anderson, Plaintiff was not shackled or naked. He claims that he lost sleep as a
11 result of the condition but, unlike the inmate in Sherman, alleges no physical harm. And
12 while the condition was undoubtedly unpleasant, Plaintiff was provided with cleaning
13 implements within a few hours. The Court finds that this does not rise to the level of a
14 constitutional violation. The Court will dismiss Count III.

15 Because no claims remain, the Court will terminate the action.

16 **IT IS ORDERED**:

17 (1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for
18 Summary Judgment (Doc. 54).

19 (2) Defendants' Motion for Summary Judgment (Doc. 54) is **granted**, and Plaintiff's
20 claim in Count III is **dismissed with prejudice**.

21 (3) The action is terminated, and the Clerk of Court must enter judgment accordingly.

22 DATED this 10th day of January, 2012.

David G. Campbell
United States District Judge